UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN JAIRO DIOSA-ORTIZ,<br><br>    Petitioner,<br><br>v.<br><br>JOHN ASHCROFT, Attorney General, TOM RIDGE, Secretary DEPARTMENT OF HOMELAND SECURITY, MICHAEL J. GARCIA, Acting Secretary, BRUCE CHADBOURNE, Interim Field Office Director, Boston District, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>    Respondents. | C.A. No. 03-12510-PBS |

## RESPONDENTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS HABEAS CORPUS PETITION

The Respondents[1], John Ashcroft, Attorney General; Tom

---

[1] The Immigration and Naturalization Service of the United States Department of Justice was "abolished" by section 471 of the Homeland Security Act of 2002, Pub. L. 107-296, tit. IV, subtits. D, E, F, 116 Stat. 2135, 2192 (Nov. 25, 2002) ("HSA"). Most of the interior enforcement functions of the former INS were transferred to the Department of Homeland Security ("DHS"), Directorate of Border and Transportation Security, Bureau of Immigration and Customs Enforcement. These changes were effective March 1, 2003. In addition, HSA section 1512(d) provides that "[r]eferences relating to an agency that is transferred to the Department in statutes, executive orders, rules, regulations, directives, or delegations of authority that precede such transfer or the effective date of this act shall be deemed to refer, as appropriate, to the Department, to its officers, employees, or agents, or to its corresponding organizational units or functions." It is understood at present

1

Ridge, Secretary of Department of Homeland Security; Michael J. Garcia, Acting Secretary, and Bruce Chadbourne, Interim Field Office Director, Bureau of Immigration and Customs Enforcement, ("Respondents") respectfully submit their Motion to Dismiss the instant Petition for a Writ of Habeas Corpus ("Petition"). For the reasons set forth below, the Petition should be dismissed.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Petitioner John Jairo Diosa-Ortiz ("Petitioner" or "Diosa-Ortiz") is a native and citizen of Columbia who entered the United States as a lawful permanent resident on July 4, 1991. See Petition, ¶7. On June 7, 1985, Diosa-Ortiz was convicted of conspiracy to possess with intent to distribute cocaine in the U.S. District Court for the Southern District of Florida. He received a three year sentence of imprisonment. Id.[2] Diosa-Ortiz was placed in deportation proceedings pursuant to an Order to Show Cause dated September 20, 1985. Id., ¶8.

After his release from prison, a deportation hearing was scheduled for February 25, 1987, in El Paso, Texas; however,

---

that the responsive successor official of the Department of Homeland Security in the instant action is Interim Field Office Director, Bruce Chadbourne, for the Bureau of Immigration and Customs Enforcement in Boston, Massachusetts.

[2] Petitioner's wife (a native of Columbia) was also convicted of the same offense.

2

neither Diosa-Ortiz nor his attorney appeared at that hearing.[3] Id., ¶9. Accordingly, by letter of that same date (February 25, 1987), the Immigration Court informed Petitioner's counsel that since Diosa-Ortiz failed to appear at his hearing, the case had been administratively closed, until the Immigration and Naturalization Service ("INS") could locate the Petitioner. Id., ¶9, Exhibit B attached thereto.

On March 9, 1987, the INS sent Petitioner's bond obligor a form I-340, "Notice to Deliver Alien", requesting that Diosa-Ortiz be delivered to the INS in El Paso, Texas (the place of his deportation hearing) for deportation on March 25, 1987[4]. Id., ¶10 Exhibit C. Shortly thereafter, on March 24, 1987, Petitioner's counsel, John Ruginski, filed an Application for Stay of Deportation, which application was also signed by Diosa-Ortiz. Id., ¶11.

After having failed to appear at his deportation proceedings, on March 29, 1987, Diosa-Ortiz voluntarily left the United States with his wife, returning to their native Columbia. Id., ¶12. Diosa-Ortiz remained in Columbia approximately 14

---

[3] To ensure his appearance at the deportation proceedings, Diosa-Ortiz was required to post a $10,000 bond. The bond obligor was an in-law of Diosa-Ortiz.

[4] Diosa-Ortiz never appeared for his deportation proceedings on that date. Had he done so, it would have been made clear that his case was administratively closed and no deportation order was ever issued. See Petition, Exhibit D.

3

months, re-entering the United States on May 1, 1988. Id., ¶14. Diosa-Ortiz gained entry into the United States by presenting a fraudulent passport in the name of Jaime Rivera. Id; See also Petition, Exhibit G, Oral Decision of Immigration Judge, April 10, 2002 ("Decision"), p. 3. Although Diosa-Ortiz maintains that he voluntarily presented himself to the INS for processing in 1993, the record reflects that it was only through the course of an INS investigation of another individual, that the INS confronted Diosa-Ortiz. At that time, Diosa-Ortiz provided false identification; that is, he informed the INS that he was Jamie Rivera. Further investigation revealed Petitioner's true identity, and then he was again placed in deportation proceedings pursuant to an Order to Show Cause dated November 19, 1993.

On August 11, 1997, the Board of Immigration Appeals ("BIA") remanded Diosa-Ortiz' deportation proceedings to the Immigration Court to address the issue of whether he was eligible for a waiver of inadmissability under Section 212(c) of the Immigration and Naturalization Act.[5]  See Petition, Exhibit G, Decision, p. 2. Two hearings were held with regard to Petitioner's 212(c)

---

[5] Under former Section 212(c) of the INA, an alien who demonstrated that he was a lawful permanent resident who temporarily proceeded abroad voluntarily and not under an order of deportation, and who is returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. See Sol v. I.N.S., 274 F.3d 648, 650 n.3 (2nd Cir. 2001).

4

waiver request.[6] On April 10, 2002, after receiving live testimony and documentary evidence, the Immigration Judge ("IJ") ruled that Petitioner was not a lawful permanent resident and, thus, statutorily ineligible for a 212(c) waiver. See Petition, Exhibit G, Decision, p. 14. Therefore, he was ordered to be deported to Columbia. Id., p. 15.

In a lengthy Decision, the IJ addressed in detail the issue of Petitioner's abandonment of his lawful permanent residence status. The Court reviewed the facts provided by Diosa-Ortiz (and his wife) during his hearing and found the following: (1) Diosa-Ortiz left the United States in 1987 with no intention of returning; (2) he had no property when he returned to the U.S.; (3) he did not appear before the Immigration Court in Texas for deportation proceedings because he did not want to be deported; (4) his attorney, John Ruginski, did not tell him he was deported as he initially maintained at the hearing, rather, he told Petitioner that if he appeared before the Immigration Court in Texas he would be deported; (5) in light of his attorney's advice, Diosa-Ortiz left the United States with no intention of returning in order to evade inevitable deportation;

---

[6] INS opposed Petitioner's 212(c) waiver on the grounds that he "abandoned" his lawful permanent resident status when he voluntarily left the United States in 1987. In response, Petitioner asserted, as he does in this Petition, that he was misled to believe that he was already ordered to be deported in light of the aforementioned letter to his bond obligor which requested Petitioner's appearance "for deportation ."

(6) he returned to the United States with a fraudulent passport in the name of Jaime Rivera; (7) while in Columbia, he obtained a job and worked to support his family; and (8) he and his wife, when they returned to Columbia, brought all of their belongings with them, never intending to return to the United States.

Accordingly, the IJ, in his Decision, ruled as follows:

> Based on the foregoing and what is contained in the record, I find that the Respondent's departure from the United States in 1987, where he returned to Columbia to avoid deportation, and resided in Columbia for 13 or 14 months until he returned to the United States as a tourist, constitutes an abandonment of his lawful, permanent residence status in the United States.
> Based on the foregoing and what is contained in the record, I find that the respondent has abandoned his lawful, permanent residence status in the United States, and, thus when he returned to the United States in 1988, as a tourist, he was in fact an immigrant not in possession of an immigrant visa, and that he was also deportable, having procured entry into the United States by fraud, and he is also deportable based on the other charges contained in the lodged charges, R Exhibit 7, concerning deportability for a violation of the narcotic laws of this Country, by evidence which is clear, convincing and unequivocal.

See Petition, Exhibit G, Decision, pp. 12, 13.

Petitioner was ordered, on April 10, 2002, to be deported to Columbia. Id., p. 15. The Decision became final on October 9,

2003, as Petitioner's appeal was dismissed by the BIA.[7] See Petition, Exhibit H. The Petitioner is in the custody of the INS pending the execution of his deportation order; however, said execution has been stayed by this Court.

Despite the facts elicited at the hearing, in his Petition Diosa-Ortiz maintains that his departure from the United States was the result of his reasonable reliance on the notification from the INS to his bondholder that said holder was to surrender Petitioner in El Paso, Texas "for deportation". Stated differently, but for Petitioner's reliance on this purported erroneous notice, he would not have left this country, and thus his departure cannot properly be considered an abandonment of his permanent residence. See Petition, p. 6. For the reasons set forth herein, the Petition should be dismissed.

## II.  ARGUMENT

1. The Petition is not subject to judicial review.

It is a longstanding rule that habeas review is limited solely to pure issues of law. See Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002)("Federal Courts retain subject matter jurisdiction over

---

[7] On October 9, 2003, the BIA upheld the IJ's Decision, holding that the facts showed that Diosa-Ortiz deliberately avoided his deportation proceedings because he believed he was going to be ordered to leave the United States See Petition, Exhibit H. Similarly, he knew that his bond obligor was ordered to have him appear in Texas on a date certain and that he refused to show up; thus, his deliberate actions lead to his purported misunderstanding that he was deported, not a letter sent to his bond obligor. Id.

7

habeas petitions brought by aliens facing removal to the extent that those petitions are based on colorable claims of legal error; that is, colorable claims that an alien's statutory or Constitutional rights have been violated"). Here, although Petitioner styles his claim as one for legal error[8], it is clear that the Petition questions the IJ's fact-finding process which led to its Decision to deem Petitioner ineligible for 212(c) discretionary relief.

However, it has been held that habeas review is not a vehicle for the Court to review and reverse the manner in which an Immigration Court's discretion was exercised by <u>examining the evidence</u> in the record supporting or undermining the alien's claim for discretionary relief. See <u>Goncalves v. Reno, et al.</u>, 144 F.3d, 110, 125 (1st Cir. 1998)(emphasis added); <u>Sol v. I.N.S.</u>, 274 F. 3d. at 650 (2nd Cir. 2001) ("This sort of fact intensive review is vastly different from what the habeas statute plainly provides: review for statutory or Constitutional errors."); <u>Lopez v. Ashcroft</u>, 267 F. Supp. 2d 150, 153 (D. Mass. 2003) ("Court holding that where a "fact-intensive review" of a legal determination "demands an extensive factual entry" that therefore "the Court does not possess habeas jurisdiction in the case").

---

[8] Petitioner also labels his claim as a due process violation; however, the undisputed facts display that Diosa-Ortiz had several hearings concerning his 212(c) waiver request. Thus, absent from the facts is any due process violation. See <u>Matter of Huang</u>, 19 I&N Dec. 749, 754 (BIA 1998).

8

As articulated <u>infra</u>, in determining whether an alien has abandoned his status as a lawful permanent resident, the IJ must engage in a fact-finding mission to ascertain, among other things, the intent of the alien's departure. See <u>Chavez-Ramirez v. I.N.S.</u>, 792 F. 2d 932, 934 (9th Cir. 1986). In this regard, the IJ reviews several objective factors in evaluating the alien's subjective intent, including, his family ties, property holdings, business affiliates in the U.S., as well as the alien's family, property and business in the foreign country. See <u>Singh v. Reno</u>, 113 F. 3d 1512, 1514-15 (9th Cir. 1995).

Here, the IJ engaged in a fact-intensive review for the purpose of making his legal determination that Diosa-Ortiz abandoned his lawful permanent resident status. Petitioner, during his hearing, raised the same factual issue (i.e., that he was misled by the INS' letter to his bond obligor) as he does in this matter; however, the IJ, after careful review of the facts, rejected this position. Stripped to its essentials, the Petition does not raise a pure issue of law challenge, but rather centers on a dispute with the IJ as to his factual findings concerning Petitioner's intent to abandon his resident status. See <u>Moin v. Ashcroft</u>, 335 F. 3d 415, 418 (5th Cir. 2003)(conclusions regarding an alien's intent to abandon permanent residence are factual). Consequently, habeas review does not lie.

9

2. <u>To the extent petitioner raises a reviewable claim, the BIA did not commit legal error.</u>

As mentioned above, the Respondents claim that Diosa-Ortiz abandoned his permanent residence status upon his departure to Columbia in 1987. In response, Diosa-Ortiz asserts that he never abandoned his lawful permanent residence status, but was misled by the INS to believe that he was already subject to a deportation order, and, thus, he voluntarily left the United States. In essence, Diosa-Ortiz is claiming that upon his return to the United States in 1988, he should have been classified as a "returning resident alien." To qualify as a returning resident alien, an alien must have acquired lawful permanent resident status in accordance with the laws of the United States, must retain that status from the time that he acquired it, and must be returning to an "unrelinquished lawful permanent residence" after a "temporary visit abroad". <u>Matter of Huang</u>, 19 I.& N. Dec. 749, 753 (BIA 1988) (<u>citing</u> <u>Santos v. INS</u>, 421 F. 2d. 1303, 1304 (9th Cir. 1970)); §§ 101(a)(27)(B) of the Immigration and Naturalization Act.

As the Court noted in its Decision, the term "temporary", as it relates to visits abroad, is not subject to inflexible definition and varies in application depending upon the <u>facts</u> and <u>circumstances</u> of each particular case. <u>See</u> <u>Gamero v. INS</u>, 367 F. 2d. 123, 126 (9th Cir. 1968). <u>See also</u> Petition, <u>Exhibit</u> <u>G</u>, Decision, p.11. What amounts to a temporary visit cannot be

defined in terms of elapsed time alone. U.S. ex rel Polly Merris v. Trudell, 49 F. 2d. 730,732 (2nd Cir. 1931), aff'd, 284 U.S. 270 (1932); rather, the intention of the alien when it can be ascertained will control. See Matter of Kane, 15 I.& N. Dec. 258, 262 (BIA 1975). In ascertaining an alien's intention, the Court must examine certain objective factors; namely, the location of the alien's family ties, property holdings in the United States, job, and whether he intended to return to the United States as a place of employment or business or as an actual home. See Matter of Muller, 16 I.& N. Dec. 637, 639 (BIA 1978); Matter of Quijencio, 15 I.& N. Dec. 95, 98 (BIA 1994). See Petition, Exhibit G, Decision, p. 11.

In this matter, the issue of Petitioner's intent was thoroughly examined at the hearing. For example, despite Petitioner's attestation that his departure was the result of a misunderstanding caused by the INS, he admitted under cross-examination that, in fact, he left the United States because he wanted to evade deportation, not for the reason elicited in this Petition.

Indeed, the colloquy between the IJ and Petitioner on this issue was as follows:

> IJ:  And how did Mr. Ruginski [Petitioner's
>      counsel]  tell you that you were ordered
>      deported from the United States of America,
>      by an Immigration Judge in a court in El Paso,
>      Texas in March of 1987, if you didn't appear
>      for a hearing before an Immigration judge,

11

and your case was administratively closed?
Could you tell me that?

A: Your Honor, I'm confused here with
the answer, again because he didn't
exactly tell me that. He told me--

IJ: Mr. Ruginski never told you you were
ordered deported because that never
happened, did it?

A: Exactly, Your Honor. I'm sorry, because
I'm a little bit confused.

IJ: He told you to leave the United States
because if you appeared before an Immigration
Judge on the charge, that you would be
deported.

A: Exactly.

IJ: And because he told you that, you decided
before you were ordered deported to leave
the United States, to avoid deportation,
right?

A: That's correct, Your Honor. Yes, that's
exactly.

Tr: 57-58

Consistent with the testimony above, the IJ found that when Diosa-Ortiz and his wife left the United States, they never intended to return, taking all their belongings with them to Columbia.  See Petition, Exhibit G, Decision, pp. 12,13.  In Columbia, they lived with Petitioner's mother, brothers and extended family.  Id., pp. 8,9.  Diosa-Ortiz worked for his brother to support his family.  Petitioner had no family in the United States (except an aunt and uncle) when he left, as his entire family was in Columbia.  Similarly, Diosa-Ortiz had no property or

12

job in the United States. <u>Id</u>.

To gain entry back into the United States in 1988, the Immigration Court found that Petitioner did not present himself as a returning resident alien but, instead, produced fraudulent documents and assumed the identity of a fictitious individual. <u>Id</u>., p. 13. These objective facts, among others,[9] resulted in the IJ's determination that Diosa-Ortiz abandoned his permanent resident status when he departed the United States in 1987. <u>See</u>, <u>e.g.</u>, <u>Matter of Muller</u>, 16 I.& N. Dec. 637, 640 (BIA 1978) (where alien left United States to evade military service, his departure was an abandonment of his permanent resident status); <u>Matter of</u>

---

[9] Not lost on the Immigration Court was the fact that during all relevant time hereto, Diosa-Ortiz was represented by counsel. Indeed, two months before Petitioner left the United States in 1987, the Immigration Court informed counsel that Petitioner's deportation case was administratively closed. In short, Petitioner's claim that he reasonably believed he was deported as a result of a letter sent to a third party which contained the words "for deportation" is belied by the facts. <u>Compare</u> <u>Tejada v. I.N.S.</u>, 346 F. 2d 389 (9th Cir. 1965)(where alien possessed statutory right to reenter the United States as a non-quota immigrant but failed to do so because U.S. Consul misinformed him during a discussion that he was ineligible for reentry, court remanded matter for further administrative findings). Here, the facts stand in stark contrast to <u>Tejada</u>. Indeed, not only did Petitioner admit that he left this Country to evade deportation, but, as the BIA noted, his own failure to appear at his deportation proceedings lead to any purported misunderstanding as to his status. To the extent Petitioner seemingly seeks equitable estoppel, this Circuit has held that "estoppel against the government, if it exists at all, is hen's teeth rare." <u>Costa v. I.N.S.</u>, 233 F. 3d 31, 38 (1st Cir. 2000). Noticeably absent form the facts is any affirmative government misconduct upon which Petitioner reasonably relied; thus, Petitioner has no claim for estoppel. <u>Dantran, Inc. v. United States Dept of Labor</u>, 171 F. 3d 58, 67 (1st Cir. 1999).

Salazar, 17 I.& N. Dec. 167, 168 (BIA 1979)(alien who departed the United States for five months to travel to various countries visiting relatives, had abandoned his permanent resident status).

### III.   CONCLUSION

For the reasons stated herein, the Petition should be dismissed.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
Michael P. Sady
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA 02210
(617) 748-3100

Dated: January 22, 2004

_____
Frank Crowley
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728, J.F.K. Station
Boston, MA 02114
(617) 565-2415

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail on _____

_____
Assistant U.S. Attorney