UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN JAIRO DIOSA-ORTIZ,<br><br>Petitioner,<br><br>v.<br><br>JOHN ASHCROFT, Attorney General, TOM RIDGE, Secretary DEPARTMENT OF HOMELAND SECURITY, MICHAEL J. GARCIA, Acting Secretary, BRUCE CHADBOURNE, Interim Field Office Director, Boston District, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondents. | C.A. No. 03-12510-PBS |

### RESPONDENTS' REPLY TO PETITIONER'S OPPOSITION TO MOTION TO DISMISS

1. <u>This Court Lacks Jurisdiction to Review the Petition</u>

After sifting through the myriad of gratuitous comments directed at the Respondents and the Immigration Court, in his Opposition, the Petitioner, in essence, maintains that under habeas jurisdiction this Court can (and should) review, de novo, the entire factual record to ascertain whether the Immigration Court correctly found Petitioner ineligible for 212(c) discretionary relief as a result of the abandonment of his lawful permanent resident status. See Plaintiff's Opposition, p.3.

The scope of federal habeas jurisdiction has been defined over the years, however, in far different terms than advocated by Petitioner. In <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001) the Supreme

Court answered the question, already resolved by the First Circuit in Mahadeo v. Reno, 226 F.3d 3 (1st Cir. 2000), whether habeas corpus jurisdiction exists for review of pure issues of law in challenges to final orders of removal.[1] In St. Cyr, the Supreme Court noted that "there is substantial evidence to support the proposition that pure questions of law" are reviewable under the writ of habeas corpus; nonetheless, in the immigration context, the scope of habeas jurisdiction is very limited. St. Cyr, 533 U.S. at 304-05.

Indeed, the Supreme Court in St. Cyr drew a sharp distinction between review of cases presenting pure law questions, and review of other, fact-bound, or discretionary cases. In recognizing that petitioner's habeas application raised a pure question of law, the Supreme Court noted that "[petitioner] does not dispute any of the facts that establish his deportability or the conclusion that he is deportable. Nor does he contend that he would have any right to have an unfavorable exercise of the Attorney General's discretion reviewed in a judicial forum. Rather, he contests the Attorney General's conclusion that, as a matter of statutory interpretation, he is not eligible for discretionary relief." Id. at 298 (emphasis added).

---

[1] The Supreme Court's very brief opinion in Calcano-Martinez v. INS, 533 U.S. 348 (2001) effectively adopted the detailed reasoning of its St. Cyr opinion.

The Supreme Court also observed that, "in the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings." St. Cyr, 533 U.S. at 311, citing Heikkila v. Barber, 345 U.S. 229 (1953). In St. Cyr, the Supreme Court observed that, historically, the "limited role played by the courts in habeas corpus proceedings was far narrower than the judicial review authorized by the APA", and that "'it is the scope of inquiry on habeas corpus that differentiates' habeas review from 'judicial review.'" Id. at 312, citing Heikkila, 345 U.S. at 236. Indeed, the Supreme Court cited to Mahadeo v. Reno, 226 F.3d 3, 12 (1st Cir. 2000) for circuit court recognition that "judicial review" "is a term historically distinct from habeas." St. Cyr, 533 U.S. at 313-14. See, e.g., Mahadeo, 226 F.3d at 8, n.6 ("Because Mahadeo's petition asserts purely statutory interpretation and constitutional questions, it falls squarely within the ambit of § 2241's jurisdictional grant."). See Goncalves v. Reno, 144 F.3d 110, 125 (1st Cir. 1998) ("[o]ur holding is narrow and nothing we say should be taken to suggest that such review [under 28 U.S.C. § 2241] as is available on habeas is necessarily as broad as the traditional administrative review available under old § 106. For example, we are not being asked to 'review[] and reverse[] the manner in which discretion was exercised' by examining 'the evidence in the record supporting or undermining the alien's claim to discretionary

3

relief.'") (emphasis added).

Recently, in Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002), the First Circuit described its understanding of St. Cyr, ruling that "[f]ederal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated." See also Reid v. INS, 203 F.Supp.2d 47, 49 (D. Mass. 2002); Sawan v. Farquharson, No. 02-10959-RGS (D. Mass. 2002) (2002 WL 1465771, *1) (the scope of habeas review of deportation orders "does not include factual or discretionary determinations made by the INS.")

Here, Petitioner asks this Court to ignore the aforementioned fundamental principle that habeas jurisdiction attaches only to "colorable claims of legal error" related to pure issues of law, such as pure statutory or constitutional claims.[2] Carranza v. INS, 277 F.3d at 71. Indeed, despite

---

[2] That is, claims of legal error or constitutional violation that involve the application of law to uncontroverted facts. See, e.g., Carranza, supra, at 152 (habeas encompasses situation where what is at stake is BIA's application of legal principles to undisputed facts). In petitioner's case he seeks to revive the factual question of whether he abandoned his lawful permanent residence, a controversy that was resolved against him conclusively by the fact-finding of the Immigration Judge. Cf. 8 U.S.C. § 1252(b)(4)(B) (regarding scope and standard for review by circuit courts of removal orders: "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

acknowledging the fact that the Immigration Judge ("IJ") conducted several days of hearings concerning whether Petitioner met the threshold factual prerequisites necessary for 212(c) relief (ie., was he a lawful permanent resident who temporarily proceeded abroad), Petitioner seemingly asserts that the IJ's factual determination is subject to de novo review as a matter of habeas relief because that issue purportedly involves the proper construction of the various statutes cited in his brief.[3]  Id., p.4.  Petitioner primarily relies on Saint Fort v. Ashcroft, 329 F.3d 191 (1st Cir. 2002) for support.  However, a review of Saint Fort displays that such an expansive reading of habeas jurisdiction is unwarranted.

At the outset, in its general discussion of habeas jurisdiction, the First Circuit in Saint Fort noted that its review of the lower court's denial of a habeas petition was de novo as it related to issues of law, citing Nadeau v. Matcsanz, 281 F.3d 12, 15 (1st Cir. 2002).[4]  See Saint Fort, 329 F.3d at

---

[3] Petitioner not only invites this Court to engage in an intensive review of the factual determinations made by the Immigration Court, but he attempts to use this habeas proceeding as a vehicle to introduce additional, new evidence never raised before the Immigration Court.  See Petitioner's Opposition, Ex. L.

[4] As stated previously, the First Circuit in Goncalves v. Reno, 44 F.3d 110, 125 (1st Cir. 1998), noted that habeas review is not even as broad as the narrow standard of review under the Administrative Procedures Act ("APA"), where the court ascertains whether substantial evidence supports administrative findings of fact.  Oddly enough, Petitioner asserts that this Court should review the factual findings of the BIA under the APA's

202. In explaining the scope of habeas jurisdiction, the First Circuit wrote that habeas encompasses colorable claims of (i) constitutional, and (ii) statutory, rights violations. Id. at 203. Included in the "statutory" violation category are issues of the proper construction of a statute. Id.[5]

In this regard, the Saint Fort Court went on to hold that "if a statute makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to even consider him." Id. In the instant case, however, the IJ did not refuse to consider Petitioner for statutory relief under 212(c); to the contrary, after several days of hearings concerning the predicate statutory requirements for 212(c) relief,[6] it was factually determined that Petitioner had abandoned his lawful permanent residency and was, therefore, not qualified for 212(c) relief.

Clearly, Petitioner is unsatisfied with the IJ's factual determination that he abandoned his lawful residence. In

---

"substantial evidence" standard. See Petitioner's Opposition, p.14.

[5] As articulated above, Petitioner asserts that "the issue in this case involves the proper construction of these statues [INA §101(a)(20) and (a)(27)(A) and INA §212(c)]." See Petitioners Opposition, pp. 3, 4.

[6] Under former Section 212(c) of the INA, an alien who demonstrated that he was a lawful permanent resident who temporarily proceeded abroad . . . and who is returning to a lawful unrelinquished domicile of seven years, may be admitted in the discretion of the Attorney General. See Sol v. INS, 274 F.3d 648, 650 n.3 (2nd Cir. 2001).

6

response, he attempts to rectify his displeasure by rewriting the very narrow limits placed on habeas review by this Circuit under the guise of Saint Fort. Needless to say, Saint Forth does not stand for the proposition, as Petitioner would like this Court to believe, that habeas encompasses record review of factual determinations made by the Immigration Court. See Sol v. INS, 274 F.3d at 651 (circuit courts addressing jurisdictional issue have indicated that federal jurisdiction over §2241 petitions does not extend to review of factual or discretionary determinations). Indeed, in explaining Saint Fort, the Court in Lopez v. Ashcroft, 267 F.Supp.2d 150, 153 (D. Mass. 2003), stated that "Saint Fort merely holds that, where a statutory or constitutional right to be considered for relief does exist, and an agency refuses to consider a petitioner for that relief, habeas jurisdiction attaches." Id. at 153.

In light of the glaring deficiencies in his case and the established precedent referenced above, Petitioner baldy casts his petition as one emanating from a colorable claim of legal error; that is, a claim that his statutory rights have been violated. Nonetheless, it is clear that Petitioner's claim is nothing more than a direct challenge to, and a request for the re-examination of, the Immigration Court's factual determination that Petitioner intentionally abandoned his residence, rendering him ineligible for 212(c) relief. To wit, Petitioner's

Opposition is comprised, in toto, of the assertion of a factual controversy relating to the intent behind Petitioner's departure from the United States in 1987, a factual determination already resolved by the finder of fact in the Immigration Court.

As articulated in Respondents' prior filing and herein, habeas jurisdiction is limited to pure issues of law, not the re-examination of the record evidence supporting an Immigration Court's factual determinations. See Respondents' Memorandum, pp. 7-9.[7] Consequently, this Court lacks jurisdiction and the Petition should be dismissed.[8] See Carranza v. INS, 277 F.3d. 65 (1st Cir. 2002).

---

[7] Even a cursory review of Petitioner's papers makes it abundantly clear that he is seeking a full record review of the factual findings of the IJ; indeed, Petitioner attaches various portions of the hearing transcript, as well as affidavits of his prior counsel, John Ruginski, and his wife, Edith Diosa (who already testified at the immigration hearing) for the purpose of supplementing the underlying record of the Immigration Court. See Petitioner's Opposition, Exs. L and N. Needless to say, Petitioner waived his ability to submit this testimonial evidence, as he failed to file a timely motion to reopen. See 8 U.S.C. § 1229a(c)(6)(C)(i) (motion to reopen must be filed within 90 days of final order). Moreover, habeas does not contemplate the review of (nor the supplementation of) the record evidence. In any event, it should be noted that the Diosa Affidavit is replete with hearsay (see, ¶¶ 3, 4, 5, 7, 10) and should be stricken.

[8] Under 8 U.S.C. §1252(a)(2)(C), Petitioner, a criminal alien, cannot seek direct review of his claim from the First Court of Appeals. If this Court dismisses the Petition on jurisdictional grounds, however, Petitioner could arguably seek review of this Court's order with the First Circuit.

2. **To the Extent Petitioner Raises a Reviewable Claim, the BIA Did Not Commit Legal Error.**

Petitioner maintains in this Petition, as he did before the Immigration Court, that he left the United States in 1987 solely as a result of a misunderstanding caused by the INS' delivery of a Form I-340 Notice to his bond holder stating that Petitioner appear in Texas "for deportation."[9] See Petitioner's Opposition, pp. 18, 20, 21. Petitioner compares his plight to that of the aggrieved alien in Tejada v. INS, 346 F.2d 389 (9th Cir. 1965). In Tejada, as a result of direct discussions between the alien petitioner and the American Consul in the Phillippines, petitioner claimed that he was misled to believe that he could not re-enter the United States after his departure, despite the existence of a congressional mandate which specifically provided that non-quota immigrants like the petitioner had an absolute right of re-entry into this country during the time frame in question. Consequently, the alien petitioner did not attempt to return to the United States and forfeited his lawful permanent

---

[9] To the extent Petitioner is attempting to raise a claim for equitable estoppel based on the wording of the Form I-340 notice, the Respondents rely on their prior filing. See Respondents' Memorandum, p. 13, n 9. See also Jobe v. INS, 238 F.3d 96, 101 (1st Cir. 2001); Costa v. INS, 233 F.3d 31, 38 (1st Cir. 2001); Socop-Gonzalez v. INS, 272 F.3d 1176, 1184 (9th Cir. 2001) (equitable estoppel applies only if INS engages in "affirmative misconduct" which is defined to mean a "deliberate lie" or "pattern of false promises").

9

resident status.[10]

The facts in this matter, however, stand in stark contrast to those in Tejada. Indeed, not only has Petitioner admitted that he returned to Columbia to evade likely deportation, but prior to the time he left this Country, he was represented by two lawyers; namely, John Ruginski and Robert Watt[11]. Both attorneys contacted the INS in Texas after the Form I-340 letter at issue was delivered to the bond holder to discuss the status of the matter referenced therein. See Petitioner's Opposition, Ex. E. The record reflects that the INS informed Petitioner's counsel, Robert Watt, on March 23, 1987 (six days before Petitioner's departure on March 29, 1987) that Petitioner should appear in Texas for "re-calendaring" of his deportation proceedings (not for deportation). Id. In fact, on March 24, 1987, Attorney Robert Watt, requested an extension of time to March 25, 1987, to produce the Petitioner for the re-calendaring of his proceedings, which was granted. Id.

Despite the extension, Petitioner never appeared in Texas. Instead, he voluntarily departed the United States claiming, at

---

[10] The Ninth Circuit in Tejada remanded the matter for further administrative proceedings to review the alleged discussion at issue between the alien and the U.S. Consul, as it had not been developed at the administrative level.

[11] Attorney Robert Watt represented Petitioner in the hearings before the Immigration Court which resulted in the ruling that Petitioner abandoned his lawful permanent resident status.

his hearing, that there "was not enough time and money" to appear in Texas on the scheduled date. See Petitioner's Opposition, p.11.

In short, despite Petitioner's attempt to recreate history through his pleadings, the facts display that Petitioner did not leave the United States under the misconception that he was "already deported" as a result of the Form I-340 sent to his bond holder; rather, he departed as a result of his desire to evade eventual deportation.[12]

---

[12] Petitioner maintains that if he was not misled he would have filed for 212(c) relief in 1987; however, the facts clearly show that he was not statutorily eligible for such discretionary relief since he resided in the United States for only six (6) years at the time, not the requisite seven years. Moreover, despite the INS' February 25, 1987 and April 17, 1987 letters to Attorney Ruginiski, advising him that Petitioner's case was administratively closed (see Petition, Ex. E), Attorney Ruginski never attempted to inform Petitioner that he was not ordered deported. Instead, on April 21, 1987, Petitioner's counsel filed a Notice of Appeal to Commissioner on behalf of the bond holder, wherein he demanded the return of the bond proceeds on the basis that "petitioner has left the Country and is residing in Columbia." Id., Ex. F., p.2. Attorney Ruginski's claim that he never received the letters, which makes its appearance for the first time in Petitioner's papers, is waived because of Petitioner's failure to have exhausted that claim administratively. Finally, Respondents fail to comprehend the significance of the INS' purported failure to re-serve, by personal service, the Notice of Petitioner's February, 1987 deportation hearing. See Petitioner's Opposition, p.18. His failure to appear did not result in an enforceable order, as his case was administratively closed. As the BIA noted in its Decision, if he had appeared for rescheduling on March 25, 1987, he would have understood his case was closed.

11

CONCLUSION

For the reasons stated herein and Respondents' prior filing, the Petition should be dismissed.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

Dated: April 16, 2004

By: /s/ Michael Sady
Michael Sady
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

By: /s/ Frank Crowley
Frank Crowley
Special Assistant U.S. Attorney
Immigration and Naturalization Service
P.O. Box 8728-J.F.K. Station
Boston, MA 02114
(617) 748-2415

CERTIFICATE OF SERVICE

I hereby certify that I have caused a true copy of the above document to be served upon Petitioner's counsel, Randy Olen, Esq., 55 Bradford Street, Suite 203, Providence, RI 02903 by first class mail on April 16, 2004.

/s/ Michael Sady
Michael Sady