UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                           )
                           )
JOHN JAIRO DIOSA-ORTIZ,    )
                           )
          Petitioner,      )
                           )
          v.               )   CIVIL ACTION NO. 03-12510-PBS
                           )
JOHN ASHCROFT, Attorney    )
General, TOM RIDGE, Secretary,)
DEPARTMENT OF HOMELAND     )
SECURITY, MICHAEL J. GARCIA, )
Acting Secretary, BRUCE    )
CHADBOURNE, Interim Field  )
Office Director, Boston    )
District, BUREAU OF        )
IMMIGRATION AND CUSTOMS    )
ENFORCEMENT,               )
                           )
          Respondents.     )
_____)
```

**MEMORANDUM AND ORDER**

July 21, 2004

Saris, U.S.D.J.

## I.  INTRODUCTION

Petitioner John Jairo Diosa-Ortiz, a native and citizen of Colombia, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to review his final order of deportation.  He argues that the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") made clearly erroneous findings of fact in determining that he had abandoned his status as a lawful permanent resident when he left the country after deliberately avoiding his deportation proceedings.  Respondents move to dismiss the

petition, arguing that the Court lacks subject matter jurisdiction to entertain petitioner's claim because it does not involve a pure question of law.  After hearing, respondents' motion to dismiss is **ALLOWED**.

## II.  FACTUAL BACKGROUND

Petitioner entered the United States as a lawful permanent resident on July 4, 1981.  On June 7, 1985, petitioner was convicted of conspiracy to possess with intent to distribute cocaine in the United States District Court for the Southern District of Florida, and was sentenced to three years of imprisonment.

While serving his sentence in Texas, on September 20, 1985, Diosa was served with an Order to Show Cause and placed into deportation hearings.  Petitioner was eventually released on a $10,000 bond.  This bond required the bond obligor to present petitioner at the Immigration Court for a deportation hearing scheduled for February 25, 1987.  Neither petitioner nor his attorney of record John Ruginksi appeared for this hearing, prompting the IJ to "administratively close" petitioner's case until the Immigration and Naturalization Service ("INS") could locate petitioner.  (Pet. Ex. B.)[1]  Petitioner claims that

---

[1]  Unless otherwise noted, exhibits filed with the original petition will be labeled "Pet. Ex. _."  Exhibits filed with petitioner's Response to Respondents' Motion to Dismiss Habeas Corpus Petition will be labeled "Mem. Ex. _."

neither he nor his attorney received notice of the hearing.

On March 9, 1987, petitioner's bond obligor received a Form I-340 "Notice to Deliver Alien," which demanded that she surrender Diosa to INS custody at the INS office in El Paso on March 24, 1987 at 10:00 a.m. "for deportation." (Pet. Ex. C.)

Petitioner has submitted an exhibit which he identifies as the handwritten notes of INS Deportation Officer Rand Smith. On March 23, 1987, petitioner's new attorney Robert Watt[2] called the INS office and informed INS Deportation Officer Rand Smith that petitioner had not known about the previous hearing. (See Mem. Ex. E.) Officer Smith advised Watt that petitioner must appear for "re-calendaring" by the next day, March 24, but indicated the possibility of a one-day extension. The next day, March 24, Watt called again and obtained a twenty-four-hour extension of the hearing. (Id.)

Apparently, that same day, March 24, 1987, petitioner's old counsel Ruginski also called the INS in El Paso and informed Smith that he had not received notice of the February 25 hearing, and that he was preparing a motion to vacate the I-340 order of March 9. (Id.) Smith advised Ruginski that the IJ had relinquished jurisdiction of the case to the INS District

---

[2] Apparently, Attorney Watt also represented petitioner at the hearings before the IJ, after which the IJ ultimately determined that petitioner had abandoned his lawful permanent residence status.

Director.  (<u>Id.</u>)  Petitioner's wife also called Smith on March 24
to ask for relief for her husband.  (<u>Id.</u>)  When she offered to
have her husband leave the United States, Smith informed her that
petitioner's leaving would not automatically end the demand on
the bond obligor.  (<u>Id.</u>)  Also on March 24, 1987, petitioner
filed an Application for Stay of Deportation, signed by
petitioner and Attorney Ruginski, stating that neither
petitioner, his attorney, nor his obligor received notice of the
February 25th hearing and that "if respondent had received notice
of the hearing date, he would have attended the hearing, admitted
the allegations, and submitted a petition for 212(c) relief."
(Pet. Ex. D.)  Petitioner did not show up for the rescheduled I-
340 hearing on March 25.  (Mem. Ex. E.)

    On March 29, 1987, petitioner departed the United States
for Colombia.  Petitioner now claims he left because he believed
he had already been ordered deported based on the I-340 form.
After petitioner's departure, on April 17, 1987 the INS responded
to the request for a stay of deportation by stating it was
unnecessary since petitioner's case had been administratively
closed and petitioner was not ordered deported.  (Pet. Ex. E.)
On April 21, 1987, Attorney Ruginski filed an appeal and request
for return of the bond, claiming: (1) that the INS's position
that there was never an order of deportation was contradicted by
the I-340, which demanded that petitioner report *for deportation*;

4

(2) that the demand for a surrender-departure was invalid because petitioner did not appear for his hearing; and (3) that the service had "failed to disprove the allegations" of petitioner, his attorney, and the obligor that they never received notice of the hearing. (Pet. Ex. F.) The Appeal also stated that petitioner had left the United States and "is residing in Colombia." (Id.)

Petitioner stayed in Colombia for 14 months. On May 1, 1988, Petitioner re-entered the United States using a fraudulent passport in the name of Jaime Rivera. (Pet. Ex. G at 3.) In 1993, in connection with the investigation of another individual, petitioner came into contact with the INS, identifying himself as Jaime Rivera. Petitioner claims that as a result of this contact with the INS, he learned for the first time that he had never been ordered deported, and that his case had been administratively closed. The INS subsequently discovered petitioner's true identity as Diosa-Ortiz. On November 19, 1993, Petitioner was served with a new Order to Show Cause and placed in deportation proceedings.

On August 11, 1997, the BIA remanded petitioner's deportation proceedings to the IJ so that petitioner could establish his eligibility for a waiver of inadmissibility pursuant to Section 212(c) of the Immigration and Nationality Act. (Pet. Ex. G at 2.) At his reopened evidentiary hearing,

petitioner argued that he was eligible for a Section 212(c)
waiver of deportability.  INS opposed petitioner's request for
waiver on the ground that petitioner abandoned his lawful
permanent residence status when he left the United States in
1987.  On April 10, 2002, the IJ ordered petitioner deported,
finding him statutorily ineligible for a 212(c) waiver because he
is "not a returning resident alien returning from a temporary
visit abroad."  (Pet. Ex. G. at 14.)  The IJ found that
petitioner "abandoned that residence upon his departure from the
United States in 1987 and returning to Colombia."  (Id.)  The IJ
stated:

> Section 212(c) of the Immigration and
> Nationality Act requires that the respondent be
> a lawful permanent resident alien of the United
> States.  Since the respondent is not a lawful,
> permanent resident of the United States at this
> juncture, he is statutorily ineligible for a
> waiver of inadmissibility pursuant to Section
> 212(c) of the Immigration and Nationality Act.

(Id.)  Based on the facts provided by Diosa-Ortiz (and his wife)
during his hearing, the IJ found the following: (1) Diosa-Ortiz
left the United States in 1987 with no intention of returning;
(2) he had no property when he returned to the United States; (3)
he did not appear before the Immigration Court in Texas for
deportation proceedings because he did not want to be deported;
(4) his attorney, John Ruginski, did not tell him he was deported
but, rather, he told Petitioner that if he appeared before the
Immigration Court in Texas he would be deported; (5) Diosa-Ortiz

6

left the United States with no intention of returning in order to evade inevitable deportation; (6) he returned to the United States with a fraudulent passport in the name of Jaime Rivera; (7) while in Columbia, he obtained a job and worked to support his family; and (8) he and his wife, when they returned to Columbia, brought all of their belongings with them, not intending to return to the United States.

The BIA affirmed the IJ's decision on October 9, 2003:

> We affirm the decision of the Immigration
> Judge with the following additions.  We
> agree, with the Immigration Judge, that the
> respondent abandoned his lawful permanent
> resident status when he departed the United
> States in 1987, believing that he had been
> deported.  The respondent argues, on appeal,
> that he mistakenly believed that he had been
> deported and that, as a result of this
> misunderstanding, he did not voluntarily
> abandon his lawful permanent resident status.
> However, we note that the respondent
> testified that he purposefully avoided his
> deportation proceedings, in September of
> 1985, because his attorney told him that he
> would likely be deported on account of his
> June 1985 conviction for conspiracy to
> possess with intent to distribute cocaine.
> After the hearing was administratively
> closed, when the respondent failed to appear,
> the respondent's sister-in-law, who had
> posted a bond assuring his appearance at his
> 1985 hearing, received a letter requesting
> that she present the respondent to the
> Department of Homeland Security (the "DHS",
> formerly the Immigration and Naturalization
> Service) in San Antonio.  The respondent
> indicated that, because he did not appear for
> his 1985 deportation proceedings, and because
> he did not report to San Antonio, he
> understood that he had been deported.  In
> sum, we cannot find that the respondent was

7

inappropriately misled, regarding his
immigration status.  Thus, we find that the
voluntariness of his departure was not
undermined by his misunderstanding regarding
his status.  Rather, his misunderstanding
regarding his status was due, in large part,
to his refusal to present himself to the
Immigration Court and the DHS as required.
Thus, we find that, as the respondent
departed the United States after deliberately
avoiding his deportation proceedings and
after choosing not to present himself to the
DHS, and as he intended not to return to the
United States, the respondent voluntarily
abandoned his permanent resident status.

(Pet. Ex. H) (citations omitted).

Petitioner filed the instant habeas corpus petition on
December 15, 2003.

### III.  DISCUSSION

**A.  Habeas Jurisdiction**

Federal courts have "subject matter jurisdiction over habeas
petitions brought by aliens facing removal to the extent that
those petitions are based on colorable claims of legal error,
that is, colorable claims that an alien's statutory or
constitutional rights have been violated."  Carranza v. INS, 277
F.3d 65, 71 (1st Cir. 2002).  A court lacks habeas jurisdiction
to evaluate claims "grounded solely in the INS's failure to
exercise its prosecutorial discretion."  Id.

Pure issues of law may be raised in habeas petitions.  See
INS v. St. Cyr, 533 U.S. 289, 302 (2001) (noting historical use
of writ to challenge detentions based on "errors of law,

8

including the erroneous application or interpretation of
statutes"); <u>Demore v. Kim</u>, 538 U.S. 510, 516-17 (2003) (upholding
use of habeas to challenge on constitutional grounds the
"statutory framework" permitting detention without bail); <u>Saint
Fort v. Ashcroft</u>, 329 F.3d 191, 203 (1st Cir. 2003) (quoting
<u>Goncalves v. Reno</u>, 144 F.3d 110, 113 (1st Cir. 1998)) (holding
that federal courts possess habeas jurisdiction over claims
arising under implementing legislation and regulations of the
Convention Against Torture).  "[I]f a statute makes an alien
eligible to be considered for a certain form of relief, he may
raise on habeas the refusal of the agency to even consider him."
<u>Id.</u>

　　　　Generally, habeas courts are precluded from reviewing the
agency's factual findings.  <u>See</u> <u>St. Cyr</u>, 533 U.S. at 311-14
(contrasting scope of inquiry on "habeas corpus" with "judicial
review" in immigration context); <u>Goncalves</u>, 144 F.3d at 125
(contrasting habeas review with administrative review available
under old Immigration and Nationality Act § 106 and noting "we
are not being asked to review and reverse the manner in which
discretion was exercised by examining the evidence in the record
supporting or undermining the alien's claim to discretionary
relief.") (internal citations omitted).  <u>See</u> <u>also</u> <u>Carranza</u>, 277
F.3d at 72 n.6 ("Purely legal questions are suitable for habeas
review because answering them does not necessitate second-

guessing the agency's factual findings or the Attorney General's exercise of her discretion.") (citations omitted); Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001) (where petitioner "does not raise a statutory or constitutional claim" but "simply contends that the decisions of the IJ and the BIA lacked adequate support in the record," his claim would necessitate fact-intensive reassessment of the evidence, which is "vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors."); Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999) (emphasizing that "[o]nly questions of pure law will be considered on § 2241 habeas review.  Review of factual or discretionary issues is prohibited."); Lopez v. Ashcroft, 267 F. Supp. 2d 150, 152-53 (D. Mass. 2003) (dismissing habeas petition seeking review of agency's denial of motion to reopen case where legal determination required by statute "demands extensive factual inquiry").  Cf. St. Cyr, 533 U.S. at 298 (Petitioner's "application for a writ raises a pure question of law.  He does not dispute any of the facts that establish his deportability or the conclusion that he is deportable.").

A court can, however, review the BIA's application of the particular facts to the relevant law.  See Wang v. Ashcroft, 320 F.3d 130, 143 (2d Cir. 2003) ("Wang's argument on appeal challenging the BIA's application of the particular facts in this case to the relevant law falls within the permissible scope of

habeas review.").

**B.  Section 212(c) Relief**

Petitioner's statutory claim is grounded in former Section
212(c) of the Immigration and Nationality Act of 1952.  Prior to
its repeal in 1996,[3] this statute granted the Attorney General
broad discretion to admit excludable aliens, including those
convicted of offenses involving the illicit traffic in narcotics.
See St. Cyr, 533 U.S. at 294-97.  That proviso, codified at 8
U.S.C. § 1182(c), stated:

> Aliens lawfully admitted for permanent
> residence who temporarily proceeded abroad
> voluntarily and not under an order of
> deportation, and who are returning to a lawful
> unrelinquished domicile of seven consecutive
> years, may be admitted in the discretion of the
> Attorney General.

Former 8 U.S.C. § 1182(c) (repealed by the Illegal Immigration
Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")).  See
Sol v. INS, 274 F.3d 648, 649 n.3 (2d Cir. 2001) (noting that
attorney general's "broad discretion" under former section 212(c)

---

[3] In 1996, Congress passed the Antiterrorism and Effective
Death Penalty Act ("AEDPA"), which made all aggravated felons
ineligible for Section 212(c) relief.  See Pub. L. No. 104-132, §
440(d), 110 Stat. 1214, 1277 (1996) (amending 8 U.S.C. §
1182(c)).  Later in 1996, Congress passed the Illegal Immigration
Reform and Immigrant Responsibility Act ("IIRIRA"), which
eliminated the Section 212(c) waiver entirely, and replaced it
with a new section, 8 U.S.C. § 1229b, that gives the Attorney
General authority to cancel removal for certain inadmissible or
deportable aliens.  See Pub. L. No. 104-208, § 304(b), 110 Stat.
at 3009-594, 3009-597.

was repealed by IIRIRA in September 1996).  Section 212(c) has been interpreted by the BIA "to authorize any permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver of deportation."  <u>St. Cyr</u>, 533 U.S. at 295 (citations omitted).

The issue of whether petitioner was a permanent resident alien with a lawful, unrelinquished domicile of seven consecutive years depends on whether he meets the requirements of a "returning resident immigrant."  <u>Chavez-Ramirez v. INS</u>, 792 F.2d 932, 933 n.2 (9th Cir. 1986).  Such an immigrant must be "lawfully admitted for permanent residence . . . returning from a temporary visit abroad."  <u>Id.</u>; 8 U.S.C. § 1101(a)(27)(A).  The INS bears the burden of proving abandonment by clear, unequivocal and convincing evidence.  <u>See</u> <u>Woodby v. INS</u>, 385 U.S. 276, 286 (1966) (holding that no deportation order may be entered unless it is found by "clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true.").  The IJ must review several objective factors in evaluating subjective intent, including the alien's family ties, property holdings, business affiliations in the United States as well as the alien's family, property and business in the foreign country.  <u>See</u> <u>Singh v. Reno</u>, 113 F.3d 1512, 1514-15 (9th Cir. 1995) ("[A]n alien's desire to retain his status as a permanent resident, without more, is not sufficient; his actions must support his professed

12

interest."). The court has to determine whether the alien had
"an intent to depart in a manner which can be regarded as
meaningfully interruptive of the alien's permanent residence."
Rosenberg v. Fleuti, 374 U.S. 449, 461 (1963) (holding that an
"innocent, casual and brief" excursion[4] by a resident alien
outside the country's borders for four hours may not be
considered a departure disruptive of his resident alien status).

Courts have noted that "[c]onclusions regarding an alien's
intent are essentially factual." Moin v. Ashcroft, 335 F.3d 415,
418 (5th Cir. 2003) (citing Chavez-Ramirez, 792 F.2d at 934-35)
(affirming, on direct review, IJ's finding that alien abandoned
her lawful permanent residence where "reasonable, substantial,
and probative evidence on the record, considered as a whole,
supports the decision's factual findings"). See also Singh, 113
F.3d at 1514-15 (listing factors to be considering in evaluating
the alien's "continued, uninterrupted intention to return to the
United States during the entirety of his . . . temporary visit
abroad").

_____

        [4]    The so-called Fleuti Doctrine -- that an "innocent,
casual and brief" departure from this country does not constitute
a break in a alien's physical presence -- has been superseded by
IIRIRA which provides that any absence outside the country for
more than 90 days at a time, or 180 days in total, breaks the
physical presence requirement.  8 U.S.C. § 1229b(d)(2).  See
generally Tapia v. Ashcroft, 351 F.3d 795, 799 (7th Cir. 2003).
No one has argued that IIRIRA should be applied retroactively to
govern petitioner who left and then returned long before
IIRIRA's enactment.  I do not address the impact, if any, of
IIRIRA, which no one has briefed.

As respondents point out, the IJ did not refuse to consider altogether petitioner's request for relief under Section 212(c). Rather, the IJ acknowledged that "the Government has lodged an allegation contending that the respondent abandoned his lawful, permanent resident status in the United States" and that "that issue is to be resolved to determine whether the respondent is eligible for a waiver of inadmissibility pursuant to Section 212(c) of the Immigration and Nationality Act." (Pet. Ex. G at 7.) The IJ held several hearings at which petitioner and his wife testified, and ultimately concluded that "the respondent's departure from the United States in 1987, where he returned to Colombia to avoid deportation, and resided in Colombia for 13 or 14 months until he returned to the United States as a tourist, constitutes an abandonment of his lawful, permanent resident status in the United States." (Id. at 13.) In reaching his conclusions, the IJ noted, among other things, petitioner's testimony that when he left the United States in 1987, he had no intention of returning to the United States and that he returned to the United States with a fraudulent passport and a tourist visa. (Id. at 12-13.)

Petitioner argues that his leaving the United States in 1987 was not voluntary and was induced by misinformation provided to him by the Immigration and Naturalization Service. See Tejeda v. INS, 346 F.2d 389, 393 (9th Cir. 1965) (holding that a poorly-

14

educated alien would be eligible for relief if it is shown he was
actually and reasonably misled by the affirmative acts and
misstatements of a well-informed official of the United States
government); <u>McLeod v. Peterson</u>, 283 F.2d 180, 184 (3d Cir. 1960)
("Where it can be shown convincingly that fundamental errors have
been committed in prior proceedings of the type here involved,
and where a holding that the individual litigant was bound by the
failures of his counsel or of the officials involved would result
in a gross miscarriage of justice, such proceedings should be
reopened and appropriate corrective measures taken.").

     Petitioner casts this dispute as a due process challenge.
While the lack of notice of the February 25 hearing would have
raised due process concerns, no deportation order actually
resulted as a result of the notice problem.  Any error in the
notice to the bond obligor was cured in subsequent discussions by
<u>two</u> separate attorneys with an INS official who agreed to
recalendar the hearing after the attorneys stated the alien never
received proper notice.  Under these circumstances, the error in
the notice to the bond obligor did not rise to the level of an
affirmative misrepresentation upon which petitioner could
reasonably rely.  <u>Both</u> of his attorneys were informed of the
second hearing.  Despite petitioner's argument in his brief that
if had received notice of the original hearing date, he would
have attended and submitted a petition for 212(c) relief, neither

15

petitioner nor either of his attorneys appeared on March 25 to make this request.

Citing extensively from the transcripts, petitioner argues that the IJ's and BIA's determination of abandonment is not supported by the record.  He contends that the IJ's fact-finding that he left the United States in order to avoid an order of deportation was clearly erroneous.  This requested fact-review is "vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors."  <u>Sol</u>, 274 F.3d at 651.

Because there was no due process violation and the petition does not involve a pure question of law, the Court does not have habeas jurisdiction.

**IV.  <u>ORDER</u>**

Respondents' motion to dismiss (Docket No. 3) is **<u>ALLOWED</u>**.

 <u>S/PATTI B. SARIS</u>
United States District Judge
